IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

NOV 23 2011

CLERK, U.S. DISTRICT COURT
by_____
Deputy

PETE THOMAS, ET AL.,                §
                                    §
            Plaintiffs,             §
                                    §
VS.                                 §   NO. 4:10-CV-861-A
                                    §
EMC MORTGAGE CORPORATION,           §
ET AL.,                             §
                                    §
            Defendants.             §

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion for summary judgment
filed in the above action by defendants, EMC Mortgage Corporation
("EMC") and The Bank of New York Mellon, formerly known as The
Bank of New York as Successor Trustee to JP Morgan Chase Bank, as
Trustee for Certificate Holders of Bear Stearns Asset Backed
Securities, Inc. Asset Backed Certificates Series 2003-2
("Bank").  Plaintiffs, Pete Thomas ("Pete") and Lesa Thomas,
filed their response,[1] and defendants filed their reply.[2]  Having
now considered all of the parties' filings, the entire summary
judgment record, and applicable legal authorities, the court

---

[1]In their reply defendants object to plaintiffs' forty-four page response brief, claiming it violates the twenty-five page limit on briefs set by Local Civil Rule LR 7.2(c).  Summary judgment briefs, however, are governed by Local Civil Rule LR 56.5, which limits the length of a principal brief to no more than fifty pages.  Plaintiffs' response brief was well within this limit.

[2]On November 7, 2011, plaintiffs filed a motion for leave to file surreply supporting their response to defendants' motion for summary judgment.  Having considered such motion, the court concludes that it should be denied.

concludes that the motion should be granted in part and denied in part.

I.

## Plaintiffs' Claims

Plaintiffs initiated this removed action by the filing on October 29, 2010, of their original petition in the District Court of Tarrant County, Texas, 67th Judicial District, asserting claims and causes of action related to defendants' attempts to foreclose on plaintiffs' property.  Plaintiffs asserted claims against defendants for breach of contract, including breach of the Real Estate Settlement Procedures Act ("RESPA"), anticipatory breach of contract, breach of the common-law tort of unreasonable collection efforts, violations of the Texas Debt Collection Practices Act ("TDCPA") and Deceptive Trade Practices Act ("DTPA"), and negligent misrepresentation/gross negligence. Plaintiffs also requested an accounting and sought declaratory and injunctive relief.

II.

## The Summary Judgment Motion

Defendants argued for summary judgment on plaintiffs' breach of contract claim on the grounds that: plaintiffs admit they breached the loan, their claim is based on a non-existent cause of action, defendants did not violate RESPA, plaintiffs' reliance on alleged promises does not constitute a breach of contract,

defendants do not owe plaintiffs a duty of good faith and fair dealing, plaintiffs cannot establish that damages resulted from the alleged appointment of a substitute trustee, and plaintiffs have suffered no damages.

As to the claim of unreasonable collection efforts, defendants contend summary judgment is warranted because there is no evidence that defendants have engaged in conduct necessary to establish such a claim, and because an arrearage dispute cannot serve as a basis for such a claim.

Defendants further argue that: plaintiffs are not entitled to relief under the TDCPA; plaintiffs cannot recover under the DTPA because they are not consumers under the act and have not suffered damages; defendants are entitled to summary judgment on plaintiffs' request for an accounting and on their claim of negligent misrepresentation/gross negligence; and plaintiffs are not entitled to declaratory or injunctive relief.

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

On or about March 25, 1996, plaintiffs executed a deed of trust to secure payment of a promissory note in the amount of $401,250.00.  The note and deed of trust secured the purchase of plaintiffs' home located in Colleyville, Tarrant County, Texas.

3

On or about March 25, 1996, plaintiffs also executed a Loan

Agreement Rider, which supplemented the note and deed of trust

and included the following pertinent provisions:

> In addition to the covenants made in the Loan
> Agreements, Borrower and Lender further covenant as
> follows:
>
> 1.   The rights and obligations of Borrower and Lender
>      shall be determined solely from the written Loan
>      Agreements, and any prior oral agreements between
>      Lender and Borrower are superseded by and merged
>      into the Loan Agreements.
>
> 2.   The Loan Agreements may not be varied by any oral
>      agreements or discussions that occur before,
>      contemporaneously with, or subsequent to the
>      execution of the Loan Agreements.
>
> 3.   The following Notice is provided pursuant to Section
>      26.02 of the Texas Business & Commerce Code:
>
> **THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL
> AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE
> CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR
> SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
>
> **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE
> PARTIES.**

Defs.' App. in Supp. of Mot. for Summ. J. ("Defs.' App.") at 41

(emphasis in original).

Pete became unable to work in the fall of 2006 and

plaintiffs fell behind on their mortgage payments.  In January

2007 plaintiffs arranged a "repayment plan with EMC to get caught

up" on their payments.  Pls.' App. in Supp. of Their Objections

and Br. in Supp. of Their Resp. to Defs.' Mot. for Summ. J.

("Pls.' App.") at 2.

4

In March 2007, after noticing unexplained fees on their mortgage statement, plaintiffs requested an accounting of their entire mortgage history up to that point. Defendants provided a Customer Account Activity Statement covering the period from January 18, 2005, to April 20, 2007, rather than the full loan period, as requested by plaintiffs. Upon review Pete noted that "numerous fees had been assessed" against the account, causing the payments to be short the full amount and thus not credited to their account. Id. Although Pete contacted defendants to dispute the fees, he was unable to obtain any explanation.

During the "next couple of years," plaintiffs "worked out several repayment plans with Defendants but were never able to come to terms on a permanent modification of the loan." Id. In 2009, plaintiffs' mortgage was assigned to Bank.

Plaintiffs contacted defendants in August of 2009 to discuss their eligibility for the "Making Homes Affordable Plan." Plaintiffs were told they would not qualify for that program, but that instead defendants could offer them three options regarding their loan, including the option selected by plaintiffs: entering into a repayment agreement, following which the past due balance would be rolled back into the note, allowing plaintiffs to be eligible for a reduced interest rate to permanently lower their payments.

In August 2009, plaintiffs entered into a repayment plan

with defendants "while the loan modification was in process."[3]

Id. at 3.   The proposed repayment plan included a letter

informing plaintiffs that EMC had "established a repayment plan

on [their] loan" and that their "loan may be eligible for a

modification in the future."   Pls.' App. at 26.   The agreement

set forth terms and conditions of the repayment plan, including

the following pertinent provisions:

> 2.   **Payments:  We agree to pay the total
> arrearage of $88,132.42, by making an
> initial down payment of $4,875.26 by Western
> Union Quick Collect on or before August 28,
> 2009 by 3:00 PM Central Standard Time.
> Subsequent payments are due the 1st of each
> month in the amount of $4,200.00.  Payments
> begin October 1, 2009 and end December 1,
> 2009.**
>
> . . . .
>
> 4.   **Balloon Payments:  This Agreement will not
> fully cure our default.  At the end of this
> Agreement our arrearages will be $85,282.95.
> We acknowledge the above stated payments
> include only a portion of the total arrears
> owed, and will not completely reinstate the
> loan or cure the default. . . .**
>
> . . . .
>
> 10.   **Borrower's Additional Representations and
> Acknowledgments: . . . We acknowledge and**

---

[3]When discussing the repayment plans, Pete's affidavit refers the court to App. 1C, 1D, 1E, and 1F. The court is unable to locate pages or exhibits in plaintiffs' appendix with those markings, but has nevertheless reviewed the documents attached to Pete's affidavit. Similarly, plaintiffs' brief frequently refers the court generally to "App. 1-6." Plaintiffs are reminded of their obligation to "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [their] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal citations omitted).

agree to the following:

a.   Our loan is in default and the default
     continues to exist until we have fully
     and completely performed all of the
     terms of this Agreement.  Our loan is
     not considered reinstated until the
     total delinquency is paid in full.

. . . .

g.   Nothing in this Agreement modifies or
     nullifies the terms of the Note and Deed
     of Trust/Mortgage, which shall remain in
     full force and effect.

. . . .

**No Waiver:**  By executing this Agreement, EMC is
not waiving and shall not be deemed to have waived
any of our defaults under the loan documents nor
any of EMC's rights or remedies against us.
Moreover, any waiver by EMC of any breach of this
Agreement or the loan documents or any related
agreement shall not be deemed a continuing waiver
of any other or subsequent breach, whether of the
same or any other provision, and shall not in any
way impair any of EMC's rights or remedies.

. . . .

. . . We agree that this Agreement contains the
entire agreement of the parties relating to this
specific act of forbearance, that there are no
verbal agreements, and that such forbearance
cannot be amended, altered or modified without an
Agreement in writing executed by us and EMC.

Pls.' App. at 27-30 (emphasis in original).  Plaintiffs signed

the repayment agreement on August 27, 2009.

     Plaintiffs paid the $4,875.26 down payment and began making

monthly payments in October 2009.  Over the course of the next

few months plaintiffs called defendants on multiple occasions

regarding the status of their loan modification and at various times were told it was in process or in underwriting. Defendants told plaintiffs "they would not foreclose while [plaintiffs'] loan modification was under review." Id. at 3.

Through the month of January 2010 plaintiffs attempted to determine the status of their loan modification from defendants. On one occasion defendants said that the loan had never been sent to underwriting; another time defendants knew nothing about plaintiffs' loan modification. Later in January 2010 plaintiffs were told defendants had no record that their loan modification was being considered and plaintiffs would have to pursue another modification or face foreclosure.

Plaintiffs then entered another repayment plan in January 2010. The cover letter from defendants, dated January 25, 2010, indicated it was "regarding [plaintiffs'] recent request for a loan modification," and gave instructions for plaintiffs to follow to "accept this Trial Plan." Id. at 36. The January 2010 Trial Plan required payments of $4,400 each on March 1, 2010, April 1, 2010, and May 1, 2010. The Trial Plan informed plaintiffs that if they failed to comply with its terms, defendants could terminate the Trial Plan and "commence or continue collection and/or foreclosure proceedings according to the terms of [plaintiffs'] Note and Security Instrument." Id. at 37. The Trial Plan further provided that "[i]f all payments are

made as scheduled," defendants would "consider a permanent workout solution for your Loan." Id. Plaintiffs were reminded that "[a]ll of the original terms of [their] Loan remain in full force and effect, unless specifically mentioned." Id.

Plaintiffs timely made the March payment, and also requested another accounting of their loan from defendants. Defendants failed to respond to this request. Plaintiffs paid the remaining payments; however, the May 2010 payment was returned for insufficient funds.

Following the rejection of their May 2010 payment, plaintiffs contacted defendants about their remaining options. "Defendants told [plaintiffs] their only recourse was a short sale." Id. at 4. Plaintiffs listed their property for sale during June, July, and August of 2010. On or around August 4, 2010, defendants sent a letter informing plaintiffs that defendants had selected a company to "facilitate and initiate a loan modification review process." Id. In September 2010, defendants' representative told plaintiffs that defendants "were not going to foreclose on the property" and that defendants needed a copy of the listing agreement, which plaintiffs provided. At some point, plaintiffs received a notice of foreclosure sale from defendants; they also had additional conversations with other representatives of defendants concerning their loan but never reached any resolution.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there

10

is no genuine dispute for trial and summary judgment is

appropriate.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587, 597 (1986).

V.

<u>Analysis</u>

A.   <u>Breach of Contract/Anticipatory Breach of Contract</u>

    Plaintiffs allege a number of acts by defendants that they

contend amount to breach of contract, including that defendants:

attempted to wrongfully foreclose on the property and violated

the Texas Constitution and the Texas Property Code; failed to

comply with RESPA; improperly appointed a substitute trustee to

conduct the foreclosure; breached a unilateral agreement based on

oral promises; and waived their right to foreclose by breaching

the duty of good faith and fair dealing.

    To prevail on their breach of contract claim, plaintiffs

must establish, <u>inter alia</u>, that they performed or tendered

performance on a valid contract.  <u>B & W Supply, Inc. v. Beckman</u>,

305 S.W.3d 10, 16 (Tex. App.--Houston [1st Dist.] 2009, pet.

denied).  It is undisputed that plaintiffs breached the note in

2006 when they "fell behind on [their] payments."  Pls.' App. at

2.  Plaintiffs also admitted in their responses to defendants'

requests for admissions that by signing the note they were

agreeing to make monthly payments, and that they failed to make

one or more such payments.  Defendants argue that plaintiffs'

11

breach bars any recovery by plaintiffs for breach of contract.

1. <u>No Waiver</u>

Without disputing their own breach, plaintiffs instead contend that defendants waived their right to act on any such breach by accepting payments after plaintiffs' default.[4] Plaintiffs also argue that "[d]efendants breached the contract by causing Plaintiffs' performance of the contractual obligation to become impossible," and that defendants "themselves then breached the contracts prior to any additional breach by Plaintiffs." Pls.' Br. at 9. The court does not find an adequate explanation of, or factual support for, these allegations in plaintiffs' brief. The court need not puzzle at length over the meaning of plaintiffs' allegations, however, because the court finds no evidence to support waiver.

To prove waiver, plaintiffs must show, <u>inter alia</u>, "an actual intent to relinquish the right (which can be inferred from conduct)." <u>G.H. Bass & Co. v. Dalsan Props.--Abilene</u>, 885 S.W.2d 572, 577 (Tex. App.--Dallas 1994, no writ) (internal citations omitted). To prove waiver based on inference, plaintiffs have the "onerous" burden to "produce conclusive evidence that the opposite party unequivocably [sic] manifested its intent to no

---

[4]In their reply, defendants contend that plaintiffs raised this argument for the first time in their response. In the petition plaintiffs alleged only that defendants "waived their right under the Deed of Trust contract to foreclose" and that they "waived their right to sell the property under the deed of trust." Defs.' App. at 9. The petition did not allege waiver by accepting payments after plaintiffs' default. Nevertheless, because defendants have briefed the issue, the court will consider the argument.

longer assert its claim." _Id._ (alteration in original)(internal citations and quotation marks omitted).  Plaintiffs claim that defendants waived their rights and remedies against plaintiffs by accepting payments under the various repayment plans.

Defendants, in contrast, point to language in the note and repayment plans that conclusively establishes they had no intent to waive their right to pursue any remedies against plaintiffs. On the subject of waiver, the note provides:

> (D) No Waiver By Note Holder.  If the Note Holder does not take action to require me to pay immediately in full any amounts I owe, the Note Holder will still have the right to do so at a later time.

Defs.' App. at 27.  Similarly, the 2009 repayment plan includes the following language:

> No Waiver:  By executing this Agreement, EMC is not waiving and shall not be deemed to have waived any of our defaults under the loan documents nor any of EMC's rights or remedies against us.  Moreover, any waiver by EMC of any breach of this Agreement or the loan documents or any related agreement shall not be deemed a continuing waiver of any other or subsequent breach, whether of the same or any other provision, and shall not in any way impair any of EMC's rights or remedies.

Pls.' App. at 30 (emphasis in original).  The 2010 trial plan likewise contains language indicating that all the terms of the note and deed of trust remain in effect, which would include the no-waiver provision.  All of the above language makes clear that defendants had no intention of waiving any rights they had under the note and deed of trust.

2.   <u>No Recovery for Anticipatory Breach of Contract</u>

Defendants argue that to the extent plaintiffs attempt to ground their breach of contract claim on an alleged attempted wrongful foreclosure, no such claim is recognized in Texas.  The court agrees.  In a wrongful foreclosure action "[r]ecovery is conditioned on the disturbance of the mortgagor's possession based on the theory that the mortgagee must have committed a wrong similar to the conversion of personal property." <u>Peterson v. Black</u>, 980 S.W.2d 818, 823 (Tex. App.--San Antonio 1998, no writ) (internal citations omitted).  The mortgagor must have suffered some loss of possession to recover for wrongful foreclosure.  <u>Id.</u>; <u>John Hancock Mut. Life Ins. Co. v. Howard</u>, 85 S.W.2d 986, 988 (Tex. Civ. App.--Waco 1935, writ ref'd).  The mortgagor has sustained no compensable damage when his possession remains undisturbed.  <u>Peterson</u>, 980 S.W.2d at 823.

Here, it is undisputed that no foreclosure sale has occurred and that plaintiffs have never lost possession of the property.  Accordingly, plaintiffs have no claim for wrongful foreclosure or for attempted wrongful foreclosure.  For the same reason, plaintiffs cannot recover for any alleged violation by defendants in appointing a substitute trustee.  <u>See</u> <u>Howard</u>, 85 S.W.2d at 988-89.  Likewise, plaintiffs allege that defendants' attempted wrongful foreclosure breached unspecified provisions of the Texas Constitution and Texas Property Code.  These claims were asserted

14

in conclusory fashion and fail to allege any cognizable claim.
Plaintiffs in the response failed to direct the court to anything
supporting such claims, and summary judgment is warranted on them
as well.

3.   No Unilateral Contract

The court agrees with defendants that summary judgment is
warranted as to plaintiffs' claim that defendants created a
unilateral contract.  Defendants' argument is based on the
following language in the Loan Agreement Rider:

> **THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL
> AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE
> CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR
> SUBSEQUENT ORAL AGREEMENT OF THE PARTIES.**
>
> **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE
> PARTIES.**

Defs.' App. at 41 (emphasis in original).  This shows the
parties' agreement that the note and deed of trust could not be
modified by subsequent oral agreement.  Plaintiffs ignored this
argument and failed to address it in their response, and
accordingly directed the court to no authority requiring the
court to disregard the plain language of the parties' agreement.

Instead, plaintiffs argue that they "never claimed there was
a unilateral contract to modify the loan; instead, they assert
that Defendants promised Plaintiffs repeatedly over three years
that [they] would engage in the loan modification process with
Plaintiffs."  Pls.' Br. at 17.  It does not appear to the court

15

that plaintiffs have adequately alleged a unilateral, rather than a bilateral, contract.[5]  Whatever plaintiffs have alleged, however, their evidence shows defendants did exactly what plaintiffs claim they promised to do:  they engaged in the loan modification process with plaintiffs.

Plaintiffs allege that in 2007, 2009, and 2010 they entered into the loan modification process with defendants, and they provided copies of two of the written repayment plans.  Each of the repayment plans, by its terms, was a prerequisite to a permanent loan modification.  None of the repayment plans promises a loan modification.  Rather, each gave plaintiffs the opportunity to be considered for a permanent modification.  The summary judgment evidence fails to support a conclusion that any unilateral contract was formed or that defendants committed any breach.

4.   <u>No Breach of the Duty of Good Faith and Fair Dealing</u>

A common-law duty of good faith and fair dealing "is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." <u>FDIC v. Coleman</u>, 795 S.W.2d 706, 708-09 (Tex. 1990).  The relationship between a mortgagor and mortgagee does not

---

[5]"A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee." <u>Vanegas v. Am. Energy Servs.</u>, 302 S.W.3d 299, 302 (Tex. 2009) (internal citations omitted).  Conversely, a unilateral contract "is created by the promisor promising a benefit if the promisee performs." <u>Id.</u>  It is apparent from the copies of the repayment plans provided by plaintiffs that plaintiffs also made promises to perform.

ordinarily involve a duty of good faith, <u>id.</u> at 709, and
plaintiffs have alleged no facts, nor cited to authority, that
would remove their relationship with defendants from ordinary
consideration.

Plaintiffs in their petition also allege that defendants
waived their rights under the deed of trust because defendants
breached their duty of good faith and fair dealing, a duty
plaintiffs claim is imposed in the performance of every contract
by the Uniform Commercial Code, Texas Business & Commerce Code §§
1.201(20) and 9.102(c).   Contrary to plaintiffs' assertions,
however, "[b]ecause the Deed of Trust places a lien on real
property, it is not governed by the UCC." <u>Vogel v. The Travelers</u>
<u>Indem. Co.</u>, 966 S.W.2d 748, 753 (Tex. App.--San Antonio 1998, no
pet.) (citing former UCC § 9.104, now § 9.109, excluding from the
scope of chapter nine "the creation or transfer of an interest in
or lien on real property").

For the first time in the response, and in conclusory
fashion, plaintiffs allege that defendants' duty of good faith
and fair dealing actually arose under the note, rather than the
deed of trust, and is thus governed by chapter three of the UCC.
This claim, which was not raised in the petition but raised for
the first time in response to defendants' motion for summary
judgment, is not properly before the court. <u>Cutrera v. Bd. of</u>
<u>Supervisors of La. State</u>, 429 F.3d 108, 113 (5th Cir. 2005).

17

Even if the court were inclined to consider this argument,
plaintiffs have directed the court to no authority in support
thereof.

    5.   <u>RESPA</u>

Plaintiffs also appear to ground their breach of contract
claim, at least in part, on alleged violations by defendants of
RESPA.  On this point the petition states:

> 15.  . . . Furthermore . . . the Note and Deed of
> Trust were issued subject to the provisions of the Real
> Estate Settlement Procedures Act of 1974, as amended,
> 12 U.S.C. Section 2601 et. seq.  A portion of each of
> Plaintiffs' monthly payments included amounts toward ad
> valorem taxes and insurance.  Plaintiffs have requested
> a transaction history of their mortgage loan pursuant
> to the Real Estate Settlement and [sic] Procedure [sic]
> Act.  However, Defendants have not responded.
>
> . . . .
>
> 21.  . . . The Deed of Trust is specifically
> subject to the terms of the Real Estate Settlement and
> [sic] Procedures Act (Respa) [sic] and Defendants have
> breached it by failing to comply.  A breach of Respa
> [sic] is a breach of the Deed of Trust contract.

Defs.' App. at 7, 8.  Plaintiffs argue that the deed of trust
states it will be governed by federal law; RESPA is a federal
law; defendants failed to comply with RESPA by not providing the
requested accounting; therefore, defendants breached the deed of
trust.  The court finds this argument unavailing.

The deed of trust mentions RESPA only in the following
context:

> 2.  . . .Lender may, at any time, collect and hold

> Funds in an amount not to exceed the maximum amount a
> lender for a federally related mortgage loan may
> require for Borrower's escrow account under the federal
> Real Estate Settlement Procedures Act of 1974 as
> amended from time to time, 12 U.S.C. § 2601 et seq.
> ("RESPA"), unless another law that applies to the Funds
> sets a lesser amount. . . .

Pls.' App. at 7.  The RESPA violation alleged in the petition--

failure to respond to defendants' written request--is not a

violation of the deed of trust provision cited above.  Thus, the

alleged breach of RESPA fails to allege a breach of contract.

What remains, however, is an alleged violation of a RESPA

provision requiring a loan servicer to timely respond to a

qualified written request from a borrower.  See 12 U.S.C. §

2605(e).  Defendants' argument as to this provision is that

plaintiffs have failed to prove or allege that: their request was

in writing; it complied with RESPA requirements for a qualified

written request; was properly sent to defendants; or that

defendants failed to comply with RESPA when responding to the

request.  Defs.' Br. at 9.

Plaintiffs' summary judgment evidence shows that they

requested an "accounting" of their mortgage statement, that

defendants did not fully respond to the first request, and they

later failed to respond to a second request.  The court finds

this evidence sufficient to raise a fact issue as to whether

plaintiffs submitted a qualified written request to which

defendants failed to respond in violation of RESPA.

6.   <u>Summary of Breach of Contract Claims</u>

The court thus concludes that summary judgment is granted on plaintiffs' breach of contract claim, but is denied as to plaintiffs' RESPA claim under 12 U.S.C. § 2605(e).

B.   <u>Unreasonable Collection Efforts</u>

Unreasonable collection is an intentional tort, the exact contours of which are not clearly defined. <u>EMC Mortg. Corp. v. Jones</u>, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no pet.). Courts have described the tort as collection efforts that amount to "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." <u>Id.</u>; <u>Montgomery Ward & Co. v. Brewer</u>, 416 S.W.2d 837, 844-45 (Tex. Civ. App.--Waco 1967, writ ref'd n.r.e.). The court agrees with defendants that there is no summary judgment evidence to support such a claim.

Plaintiffs allege that defendants:  continually failed to provide plaintiffs with correct information regarding their loan modification, represented that no foreclosure would occur during the loan modification process, misrepresented to plaintiffs that their repayment plan would roll over into a loan modification, and failed to give plaintiffs an accounting under RESPA.

Plaintiffs also allege that defendants' representatives called plaintiffs numerous times attempting to collect the debt, and continued calling even after plaintiffs explained that they

were in a repayment plan.  Plaintiffs have directed the court to

no evidence supporting these allegations, and the court found

none in its review of plaintiffs' appendix.  Thus the court will

not consider the allegations of repeated phone calls.

The court finds the remaining allegations insufficient to

show a course of harassment that was "willful, wanton, malicious,

and intended to inflict mental anguish and bodily harm." <u>Jones</u>,

252 S.W.3d at 868.  Plaintiffs rely on <u>Jones</u> to support their

claim, but the court finds the circumstances in that case to be

far more egregious than those alleged by plaintiffs.  For

example, the defendant in <u>Jones</u> not only followed through with a

foreclosure sale after telling the plaintiffs it would not do so,

it then sent a "very large, intimidating man" who pounded on the

door of the plaintiffs' home, forced his way into the foyer of

the home, and "began yelling and screaming" at plaintiffs to

remove their belongings because they no longer owned the house.

<u>Id.</u> at 864.  Although the defendant acknowledged its mistake in

foreclosing on the home, it immediately engaged a different law

firm to send an eviction letter to plaintiffs, and took several

months to rectify the error, during which time it caused

cancellation of plaintiffs' homeowners' insurance, failed to

credit payments made by plaintiffs to their account, continued to

report the foreclosure on the plaintiffs' credit report, retained

title to the home, and improperly paid a $10,000 judgment to

21

another of the plaintiffs' creditors on a disputed claim out of the escrow funds without plaintiffs' consent.  Id. at 864-65.

None of the alleged acts of defendants come close to those found by a jury in Jones to constitute unreasonable collection efforts.  At most, the essence of plaintiffs' allegations against defendants is that they failed to clearly inform plaintiffs of the amounts plaintiffs owed on their note and did not approve plaintiffs for a permanent loan modification.  However, despite this confusion, plaintiffs admit they were in default on the note, even if they now question the total extent of the default.

Plaintiffs urge the court to consider a definition of unreasonable collection efforts as "efforts which a person of ordinary prudence in the exercise of ordinary care on his part would not have exercised under the same or similar circumstances."  Employee Fin. Co. v. Lathram, 363 S.W.2d 899, 901 (Tex. Civ. App.--Fort Worth 1962), rev'd on other grounds, 369 S.W.2d 927 (Tex. 1963).  The language upon which plaintiffs rely was a jury instruction submitted on the charge of unreasonable collection efforts.  Id. at 901.  None of the offensive conduct is described in the opinion, and plaintiffs have directed the court to no authority where, on conduct similar to that alleged here, a defendant was found to have engaged in unreasonable collection efforts using that standard.

Accordingly, the court concludes that summary judgment is

warranted on this claim.

C.   TDCPA

Defendants argue, in conclusory fashion, that plaintiffs
cannot recover on their claims under the TDCPA because they "have
not identified any misrepresentation of the debt by Defendants,
any wrongful collection attempt, or any alleged damages."  Defs.'
Br. at 16.  Plaintiffs' summary judgment evidence, however,
alleges misrepresentations allegedly made by defendants, and also
alleges that the plaintiffs suffered damages such as "substantial
stress," "loss of sleep" which has affected Pete's "ability to
perform normally during daytime activity including work," and
other damages.  Pls.' App. at 5.  Plaintiffs have provided
sufficient evidence to overcome summary judgment on this claim.

D.   DTPA Claims

Plaintiffs expressly abandoned their DTPA claims in their
response, so no further discussion by the court is warranted,
except to note that such claims are dismissed.

E.   Negligent Misrepresentation/Gross Negligence

To prevail on their claim for negligent misrepresentation,
plaintiffs must show: (1) defendants made a representation in the
course of their business, or in a transaction in which they had a
pecuniary interest; (2) defendants supplied "false information"
for the guidance of others in their business; (3) defendants
failed to exercise reasonable care or competence in obtaining or

communicating the information; and (4) plaintiffs justifiably relied on the representations to their detriment.  <u>Fed. Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991).  The type of misrepresentation contemplated is a statement of existing fact, not a promise of future conduct.  <u>BCY Water Supply Corp. v. Residential Inv., Inc.</u>, 170 S.W.3d 596, 603 (Tex. App.--Tyler 2005, pet. denied).  "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact."  <u>Id.</u> (citations omitted).

Plaintiffs' response, relying on Pete's affidavit, describes the alleged representations made by defendants to plaintiffs, all of which involve actions which may be performed in the future. The only possible allegations of existing fact are that defendants told plaintiffs their loan modification was in process, and later, that it was in underwriting.  However, plaintiffs fail to allege how they relied on these representations to their detriment.

An additional hurdle for plaintiffs is that all of their alleged damages and causes of action flow from the note and deed of trust.  Generally, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties."  <u>Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.</u>, 847 S.W.2d 289, 295 (Tex. App.--El Paso 1992, writ denied).

As explained by the Texas Supreme Court:

> If the defendant's conduct--such as negligently burning
> down a house--would give rise to liability independent
> of the fact that a contract exists between the parties,
> the plaintiff's claim may also sound in tort.
> Conversely, if the defendant's conduct--such as failing
> to publish an advertisement--would give rise to
> liability only because it breaches the parties'
> agreement, the plaintiff's claim ordinarily sounds only
> in contract.

Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex.
1991).  Plaintiffs have identified no conduct of defendants that
would give rise to liability outside of the note and deed of
trust as would sustain a claim of negligent misrepresentation.

To establish their claim of gross negligence requires
plaintiffs to show that "(1) when viewed objectively from the
actor's standpoint, the act or omission complained of must
involve an extreme degree of risk, considering the probability
and magnitude of the potential harm to others; and (2) the actor
must have actual, subjective awareness of the risk involved, but
nevertheless proceed in conscious indifference to the rights,
safety, or welfare of others."  Lee Lewis Constr., Inc. v.
Harrisson, 70 S.W.3d 778, 785 (Tex. 2001) (internal citation
omitted).

The court finds no support for this claim in the summary
judgment record.  Plaintiffs have directed the court to no
summary judgment evidence showing defendants had "actual,
subjective knowledge" of any "extreme degree of risk" to

25

plaintiffs and that they acted "in conscious indifference to any
such rights."  Nor does the response direct the court to any
authority holding that the circumstances alleged here would
warrant a finding of gross negligence.  Accordingly, summary
judgment is warranted on plaintiffs' negligent misrepresentation/
gross negligence claims.

F.   Declaratory Judgment and Temporary Restraining Order

     The petition seeks relief under the Texas Uniform
Declaratory Judgments Act, section 37.002 of the Texas Civil
Practice & Remedies Code.  When a case is removed to federal
court, however, the court instead considers application of the
federal Declaratory Judgment Act ("Act"), 28 U.S.C. § 2201, et
seq.  See Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210
(5th Cir. 1998).  The Act is a procedural device that creates no
substantive rights, but only provides relief when a justiciable
controversy exists between the parties.  Aetna Life Ins. Co. v.
Haworth, 300 U.S. 227, 239-41 (1937).

     Defendants' argument as to plaintiffs' request for
declaratory judgment is primarily based on their contention that
if the court grants their motion for summary judgment in its
entirety, no justiciable controversy remains between the parties.
As the court has denied summary judgment on at least one of
plaintiffs' claims, summary judgment is denied as to plaintiffs'
claim for declaratory relief.

Defendants rely on the same argument in support of their motion for summary judgment on plaintiffs' request for injunctive relief, and for the same reason, the motion is denied on this claim as well.[6]

## VI.

## Order

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted as to plaintiffs' claims for breach of contract, unreasonable collection efforts, claims under the DTPA, and negligent misrepresentation/gross negligence, and that all such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS that defendants' motion for summary judgment and be, and is hereby, denied as to plaintiffs' claims pursuant to RESPA, 12 U.S.C. § 2605(e), the TDCPA, and for declaratory and injunctive relief.

SIGNED November 23, 2011.

_____
JOHN McBRYDE
United States District Judge

---

[6]Plaintiffs' response states only that "[p]laintiffs' request for injunctive relief is not a cause of action and should not be dismissed via summary judgment." Pls.' Br. at 37. It is not clear to the court what plaintiffs mean by this statement. The court assumes the parties will address this issue along with the other issues that remain for trial.